IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ISAAK SMITH <br> 3393 Timber Lane <br> Hermitage, Pennsylvania 16148 <br><br> Plaintiff, <br><br> v. <br><br> STEWARD TRUMBULL MEMORIAL <br> HOSPITAL, INC. d/b/a Trumbull Regional <br> Medical Center <br> 1350 East Market St. <br> Warren, Ohio 44483 <br><br> **Serve Also:** <br> c/o CT Corporation System (Stat. Agent) <br> 4400 Easton Commons Way <br> Suite 125 <br> Columbus, Ohio 43219 <br><br> -and- <br><br> CAROL A. SNOWBERGER <br> 1350 East Market St. <br> Warren, Ohio 44483 <br><br> -and- <br><br> MICHAEL L. HALL <br> 10730 Clapsaddle Ave. NE <br> Alliance, Ohio 44601 <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. <br><br> JUDGE: <br><br><br><br> **COMPLAINT FOR DAMAGES** <br> **AND INJUNCTIVE RELIEF** <br><br> **Jury Demand Endorsed Herein** |

Plaintiff, Isaak Smith, by and through undersigned counsel, as his Complaint against Defendants, states and avers the following:

## PARTIES

1. Smith is a Pennsylvania resident.

2. Defendant Steward Trumbull Memorial Hospital, Inc.. d/b/a Trumbull Regional Medical Center ("Stewart") is a foreign-incorporated company that conducts business within the state of Ohio, and which maintains its principal place of business at 1350 East Market Street, Warren, Ohio 44483.

3. Upon information and belief, Snowberger is a resident of Ohio.

4. At all time referenced herein, Snowberger was the Human Resources Director for Stewart and was a "person" and/or "employer" within the meaning of 29 USC § 203(a) & (d).

5. Upon information and belief, Snowberger is a resident of Ohio.

6. At all time referenced herein, Hall was a Director for Stewart and was a "person" and/or "employer" within the meaning of 29 USC § 203(a) & (d).

## PERSONAL JURISDICTION.

7. Defendants hire citizens of the state of Ohio, contract with companies in Ohio, and/or own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

## SUBJECT MATTER JURISDICTION AND VENUE.

8. This Court has original subject matter jurisdiction of this case under 28 U.S.C. §§1331 and 1341, inasmuch the matters in controversy are brought pursuant to the FLSA, 29 U.S.C § 215.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Smith's state law claims under the Ohio Minimum Fair Wages Standards Act ("OMFWSA") and the Ohio Constitution because those claims derive from a common nucleus of operative facts.

10. Venue is proper in this District because the wrongs herein alleged occurred in this District.

## STATUTORY COVERAGE.

11. At all times referenced herein, Stewart formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

12. At all times referenced herein, Stewart was a "named enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r)(2)(A), in that said enterprise at all times hereinafter mentioned was a "named enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r)(2)(A), in that said enterprise at all times hereinafter mentioned was a "hospital" and/or "an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution."

13. At all times referenced herein, Snowberger and Hall exercised control over Smith's employment and, as stated herein, made intentional decisions within the scope of their respective employment with Stewart that resulted in the wrongful termination of Smith from his employment with Stewart.

## **FACTUAL ALLEGATIONS.**

14. Smith is a former employee of Stewart.

15. Smith was hired by Stewart as a Clinical Pharmacy Manager on or about March 7, 2022.

16. Hall took a vacation in or around July of 2022.

17. While Hall was on vacation, Sandy Barray, a Technician at Stewart, worked overtime.

18. When Hall returned and discovered that Barray had worked overtime, he became angry and started yelling at Barray.

19. A week later, Smith was talking with Barray, and she told Smith that Hall had wrongfully deleted the overtime that she had recorded on her time records.

20. Barray showed Smith her timecard, which showed that Hall had wrongfully deleted the overtime from her timecard.

21. Smith reviewed the time recording system, which allows people to make edits and records when edits are made.

22. Smith discovered that Hall had edited Barray's timecard to wrongfully delete the overtime that Barray had worked.

23. After reviewing additional time records, Smith discovered that Hall was rounding time records down so that employees would not receive any credit for clocking in earlier than their shift start time.

24. On August 5, 2022, Smith reported Hall's alteration of employee time records.

25. Smith reported that he reasonably believed that Hall had been illegally deducting time from employees' timecards; this was a protected report by Smith ("First Wage Complaint").

26. Snowberger thanked Smith for making the First Wage Complaint and assured him that she would investigate.

4

27. A week later, on August 12, 2022, Smith was called into a meeting with Hall and Snowberger.

28. Hall and Snowberger informed Smith that his pay and hours were being reduced.

29. Upon information and belief, Hall and Snowberger mutually participated in making the decision to reduce Smith's hours and salary.

30. Smith was shocked by the adverse employment action Hall and Snowberger were taking against him.

31. Two months earlier, Stewart had announced that it was making staffing reductions.

32. Smith was not initially selected to have his hours reduced.

33. Prior to Smith's First Wage Complaint, another employee, Kelly Cleland, had been selected to have her hours and pay reduced.

34. Subsequent to Smith's First Wage Complaint, Defendants instead made the decision to cut Smith's hours and pay rather than Cleland's.

35. At all times referenced herein, Stewart's policy of determining which employees it would "cut back" was based on seniority ("Reduction Policy").

36. Pursuant to Stewart's Reduction Policy, Employees with less seniority would have their hours and pay cut before employees with more seniority.

37. Smith began working at Stewart one month before Cleland, and therefore had more seniority than her.

38. Pursuant to Stewart's policy, Cleland should have been selected to have her hours and pay reduced rather than Smith.

39. Defendants reduced Smith's hours and pay in retaliation for his making the First Wage Complaint.

40. Approximately a week after the meeting on August 12, 2021, Snowberger told Smith that she had investigated his First Wage Complaint and that she could not find any illegal activity by Hall.

41. Smith knew that Snowberger's findings were incorrect.

42. Smith informed Snowberger that he would send her evidence of Hall's illegal activity.

43. Subsequent to the meeting, Smith took screenshots of the altered time entries, and sent them to Snowberger.

44. Smith also informed Snowberger that he believed he was required to report Hall's activity to Stewart's compliance department.

45. Thereafter, Smith reported Hall's activity to Stewart's compliance department; this was another protected report by Smith ("Second Wage Complaint").

46. Smith never received a response to his Second Wage Complaint to Stewart's compliance department.

47. After Smith's First Wage Complaint and Second Wage Complaint, Snowberger and Hall began to retaliate against Smith and subject him to a hostile work environment.

48. Smith's coworkers noticed that Snowberger and Hall were treating Smith with hostility after his protected complaints.

49. On September 20, 2022, Smith found out that in addition to having his salary and hours cut, he would also be moved to part-time status, despite Stewart's assurances that he would remain full-time.

50. As a result, Smith was no longer able to accrue sick leave and had his benefits cut.

51. In total, Smith sent four emails complaining about the retaliation, but never received a response from Stewart ("First Retaliation Complaint").

52. On October 5, 2022, Smith also filed an ethics complaint with Stewart.

53. In October 2022, Hall was terminated.

54. A day after Stewart decided to terminate Hall, Snowberger finally met with Smith to discuss his complaints regarding retaliation.

55. Smith explained that Hall made his job miserable, refused to acknowledge or speak to Smith every day during team meetings, and was openly hostile to Smith in front of other employees.

56. Smith later learned that Stewart had already decided to terminate Hall before it met with him, and that the meeting was just an effort to placate him.

57. It was clear that Stewart did not treat Smith's complaints seriously.

58. Subsequently, Smith was named Pharmacist-in-Charge ("PIC"), requiring his name to be listed on the pharmacy's license.

59. Snowberger did not participate in making the decision to make Smith the PIC.

60. Smith's pay was not increased despite his title change.

61. Even though Smith was only a part-time employee, he was listed on the pharmacy's license.

62. Smith continued to request to Snowberger that his benefits be reinstated, but Snowberger kept delaying implementation of that change.

63. In December 2022, Stewart's management approved Smith's request to return to full-time status.

64. Snowberger blocked this change and refused to move Smith back to full-time status.

65. Although Smith was PIC, Snowberger refused to move him back to full-time in retaliation for his protected wage complaints.

66. Snowberger's blocking Smith's reinstatement to full-time employment was an adverse action against Smith.

7

67. Snowberger refused to reinstate Smith in hopes that Smith would feel compelled to resign his employment if he could not obtain the pay and benefits full time employment provided.

68. Accordingly, Smith reported Snowberger's continuing retaliation to Rhett Cavicchi in Stewart's corporate office.

69. Smith met with Cavicchi via videoconference and reported ongoing retaliation from Snowberger ("Second Retaliation Complaint").

70. Cavicchi informed Smith that he would investigate his Second Retaliation Complaint and get back to him.

71. Smith had another meeting scheduled with Cavicchi to follow up on his Retaliation Complaint, but Cavicchi canceled the meeting and Smith never heard back from him again.

72. Stewart failed to take any remedial action to stop Snowberger's retaliation against Smith.

73. It became clear to Smith that Snowberger would not cease retaliating against him.

74. As a result of the adverse actions taken by Defendants, Smith had no choice but to resign from Stewart effective January 13, 2023.

75. Tellingly, after Smith's resignation, Stewart posted his vacated position as a full-time rather than part-time position.

76. Smith's constructive termination was an adverse employment action by Stewart and Snowberger.

77. Stewart and Snowberger did not have an overriding justification for failing and refusing to reinstate Smith to full-time.

78. Smith was retaliated against for making complaints about unpaid wages and retaliation in the workplace.

79. There was a causal connection between Smith's protected activity and the adverse actions taken against Smith.

80. As a direct and proximate result of Defendants' conduct, Smith suffered and will continue to suffer damages.

### COUNT I: UNLAWFUL RETALIATION BASED ON PROTECTED WAGE COMPLAINTS IN VIOLATION OF THE FLSA- WRONGFUL REDUCTION IN PAY AND BENEFITS.
### (Asserted Against All Defendants).

81. Smith restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

82. Pursuant to 29 U.S.C. § 215, "no employer shall discharge or in any other manner discriminate against any employee because the employee has made any complaint to the employee's employer, or to the director, that an employee has not been paid wages in accordance with the provisions of 29 U.S.C. § 201 *et seq.*"

83. Following Smith's First Wage Complaint and Second Wage Complaint, and as a proximate cause of those complaints, Defendants retaliated against Smith by reducing his hours and pay.

84. Defendants' retaliatory actions constituted unlawful retaliation in violation of 29 U.S.C. § 215.

85. As a result of Defendants' retaliation against Smith in violation of 29 U.S.C. § 215, Smith has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Smith to equitable and compensatory monetary relief.

86. As a result of Defendants' retaliation against Smith in violation of 29 U.S.C. § 215, Smith has suffered mental anguish and emotional distress, including, but not limited to, depression,

9

humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

87. In its retaliatory actions as alleged above, Defendants acted willfully, thereby entitling Smith to an award of liquidated damages.

88. To remedy the violations of the rights of Smith secured by 29 U.S.C. § 215, Smith requests that the Court award him the relief prayed for below.

### COUNT II: UNLAWFUL RETALIATION BASED ON PROTECTED WAGE COMPLAINTS IN VIOLATION OF THE FLSA – WRONGFUL CONSTRUCTIVE DISCHARGE.
### (Asserted Against Stewart And Snowberger Only).

89. Smith restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

90. Pursuant to 29 U.S.C. § 215, "no employer shall discharge or in any other manner discriminate against any employee because the employee has made any complaint to the employee's employer, or to the director, that an employee has not been paid wages in accordance with the provisions of 29 U.S.C. § 201 *et seq.*"

91. Following Smith's First Retaliation Complaint and Second Retaliation Complaint, and as a proximate cause of those complaints, Stewart and Snowberger retaliated against Smith by refusing to reinstate him to full time status, forcing Smith to resign.

92. Defendants' retaliatory actions constituted unlawful retaliation in violation of 29 U.S.C. § 215.

93. As a result of Defendants' retaliation against Smith in violation of 29 U.S.C. § 215, Smith has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Smith to equitable and compensatory monetary relief.

94. As a result of Defendants' retaliation against Smith in violation of 29 U.S.C. § 215, Smith has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

95. In its retaliatory actions as alleged above, Defendants acted willfully, thereby entitling Smith to an award of liquidated damages.

96. To remedy the violations of the rights of Smith secured by 29 U.S.C. § 215, Smith requests that the Court award him the relief prayed for below.

### COUNT III: UNLAWFUL RETALIATION BASED ON PROTECTED WAGE COMPLAINTS IN VIOLATION OF ARTICLE II, SECTION 34A OF THE OHIO CONSTITUTION - WRONGFUL REDUCTION IN PAY AND BENEFITS.
### (Asserted Against Stewart And Snowberger Only)

97. Smith restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

98. Pursuant to Article II, Section 34a of the Ohio Constitution, "[n]o employer shall discharge or in any other manner discriminate or retaliate against an employee for exercising any right under this section or any law or regulation implementing its provisions or against any person for providing assistance to an employee or information regarding the same."

99. Following Smith's First Wage Complaint and Second Wage Complaint, and as a proximate cause of those complaints, Defendants retaliated against Smith by reducing his hours and pay.

100. Defendants' retaliatory actions constituted unlawful retaliation in violation of Article II, Section 34a of the Ohio Constitution

101. As a result of Defendants' retaliation against Smith in violation of Article II, Section 34a of the Ohio Constitution, Smith suffered damages and is entitled to compensatory damages and

11

those damages provided for in Ohio R.C. § 4111.14(j), to include "an amount set by…[the] court sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued."

### COUNT IV: UNLAWFUL RETALIATION BASED ON PROTECTED WAGE COMPLAINTS IN VIOLATION PROTECTED WAGE COMPLAINTS IN VIOLATION OF ARTICLE II, SECTION 34A OF THE OHIO CONSTITUTION – WRONGFUL CONSTRUCTIVE DISCHARGE.
### (Asserted Against Stewart And Snowberger Only).

102. Smith restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

103. Pursuant to Article II, Section 34a of the Ohio Constitution, "[n]o employer shall discharge or in any other manner discriminate or retaliate against an employee for exercising any right under this section or any law or regulation implementing its provisions or against any person for providing assistance to an employee or information regarding the same."

104. Following Smith's First Retaliation Complaint and Second Retaliation Complaint, and as a proximate cause of those complaints, Stewart and Snowberger retaliated against Smith by refusing to reinstate him to full time status, forcing Smith to resign.

105. Defendants' retaliatory actions constituted unlawful retaliation in violation of Article II, Section 34a of the Ohio Constitution.

106. As a result of Defendants' retaliation against Smith in violation of 29 U.S.C. § 215, Smith has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Smith to equitable and compensatory monetary relief.

107. As a result of Defendants' retaliation against Smith in violation of Article II, Section 34a of the Ohio Constitution, Smith suffered damages and is entitled to compensatory damages and those damages provided for in Ohio R.C. § 4111.14(j), to include "an amount set by…[the]

court sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued."

### **PRAYER FOR RELIEF.**

WHEREFORE, Plaintiff Isaak Smith requests judgment in his favor against Defendants, containing the following relief:

(a) An order directing Stewart to place Smith in the position she would have occupied but for Defendants' retaliatory treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Smith;

(b) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Smith for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(c) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Smith for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Smith for harm to his professional and personal reputation and loss of career fulfillment;

(e) An award of damages for any and all other monetary and/or non-monetary losses suffered by Smith in an amount to be determined at trial, plus prejudgment interest;

(f) An award of damages of at least one hundred and fifty dollars per day Defendants' retaliatory conduct continued, pursuant to Ohio R.C. § 4111.14(j);

(g) An award of costs that Smith has incurred in this action, as well as Smith's reasonable attorneys' fees to the fullest extent permitted by law; and

(h) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Isaak Smith*

## JURY DEMAND

Plaintiff Isaak Smith demands a trial by jury by the maximum number of jurors permitted.

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S LAW FIRM**